```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                       NORTHERN DIVISION


- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA,       :
                                :
     v.                         :   Criminal No. 03-0088-WDQ
                                :
ANTHONY J. MARCANTONI,          :
                                :   Baltimore, Maryland
             Defendant.         :
- - - - - - - - - - - - - - - - x   January 18, 2013
```

**HEARING**

```
BEFORE:            THE HONORABLE WILLIAM D. QUARLES, Judge

APPEARANCES:       DEBORAH JOHNSTON, Esq.
                   Office of the United States Attorney
                   36 S. Charles St., 4th Fl.
                   Baltimore, MD 21201
                        On Behalf of the Government

                   HOWARD L. CARDIN, Esq.
                   STEVEN LEVINE, Esq.
                   Cardin and Gitomer, P.A.
                   211 Saint Paul Place
                   Baltimore, MD 21202
                        On Behalf of the Defendant

ALSO PRESENT:      JOHN ALBERT, Probation Officer
                        On Behalf of Department of Parole
                        and Probation


Audio Operator:    Katina Tyson

Transcription Company:  CompuScribe
                   5100 Forbes Boulevard, Suite 101
                   Lanham, MD. 20706
                   (301) 577-5882
```

Proceedings recorded by electric sound recording, transcript
produced by transcription service.

I N D E X

                                                          Page

Preliminary Matters                                          2

Court Qualifies Defendant                                    5

Statement of Facts by Deborah Johnson, Esq.
     Attorney for the Government                             7

Ruling by Judge Quarles                                      9

Government's Disposition                                     9

Comments by Howard Cardin, Esq.
     Attorney for the Defendant                             15

Comments by Steven Levine, Esq.
     Attorney for the Defendant                             21

Sentencing by Judge Quarles                                 24


EXHIBITS:                    FOR IDENTIFICATION      IN EVIDENCE
For the Government:

     1                              8                     8

Keynote:  "---" indicates inaudible in transcript.

1                    P R O C E E D I N G S

2         THE COURT:  Good afternoon please be seated.

3         (Chorus of "Good afternoon, Your Honor.")

4         MS. JOHNSON:  Good afternoon, we are here in the

5    matter of the United States of America versus Anthony J.

6    Marcantoni, case number AMD-03-0088.  I am Deborah Johnson

7    representing the Government. Seated with me at counsel table is

8    Probation Officer John Allen.

9         THE COURT:  Ms. Johnson, Mr. Albert, good afternoon.

10        MR. ALBERT:  Good afternoon, Your Honor.

11        MR. CARDIN:  Good afternoon, Your Honor, Howard

12   Cardin, Steven Levine representing Mr. Marcantoni.

13        THE COURT:  Mr. Cardin, Mr. Levine, Mr. Marcantoni.

14   How are we proceeding counsel?

15        MR. CARDIN:  Your Honor, frankly I think I am

16   reading the notice of violation for the first time.  Obviously

17   my client was convicted through the United States District

18   Court for the District of Maryland before His Honor Judge Titus

19   and I assume that that is the grounds for the violation.

20        MS. JOHNSON:  Your Honor, I believe there are

21   multiple ground for the violation.  And the most recent

22   petition was filed on June 15, 2011.  I think it was a sealed

23   document at that time, Document 82 in the record.  We are -- if

24   the defendant acknowledges and admits his violation based on

25   that conviction, we will move to dismiss the other grounds

1   which include failing to file written reports and filing

2   reports that contain false information.

3              THE COURT:  You are proceeding on the -- which dated

4   one?

5              MS. JOHNSON:  Your Honor, it is document 82, filed

6   on June 15, 2011.

7              THE COURT:  Okay.

8              MR. CARDIN:  Again, Your Honor, we are obviously

9   prepared to admit the conviction before Judge Titus, in this

10  Court only in the southern district.

11             THE COURT:  The June 15 does not have the conviction

12  but I assume --- be willing to admit the statutory conviction

13  which will not illegally possess a controlled substance and

14  clearly the conviction means that he violated that statutory

15  condition.  That would be the second whereas on the carryover

16  sheet of the June 15, 2011 --

17             MS. JOHNSON:  As well as the first one, Your Honor,

18  which is shall not commit any federal, state or local crime.

19             THE COURT:  Yes.

20             MR. CARDIN:  Yes.

21             MS. JOHNSON: I think at the third one as well as

22  admitted with our -- with his guilty plea, the first three are

23  admitted and it would be the last three that are not.

24             THE COURT: Okay, well, I don't have the plea in

25  front of me.  I do have the conviction and the conviction

1    establishes --- any agreed upon disposition folks?

2              MS. JOHNSON:  No, Your Honor.  There is no agreed on

3    disposition.

4              MR. CARDIN: We would like to but no, Your Honor, we

5    have not agreed on disposition.

6              THE COURT:  Usually you all work those out.

7              MR. CARDIN:  We seem to think there should have

8    been, but no there is no agreed disposition.

9              THE COURT:  Okay.  Madam Clerk will you please

10   swear Mr. Marcantoni.

11             (Whereupon, the defendant was sworn in.)

12             THE DEFENDANT:  Yes, ma'am.

13             THE CLERK:  Thank you. Please state your full name

14   for the record.

15             THE DEFENDANT:  Anthony Joseph  Marcantoni.

16             THE CLERK:  Thank you.  What is your age?

17             THE DEFENDANT:  32.

18             THE CLERK:  And what year were you born?

19             THE DEFENDANT:  1980.

20             THE CLERK:  Thank you.

21             THE COURT:  All right, Mr. Marcantoni, how far did

22   you go in school?

23             THE DEFENDANT:  52 credits of college.

24             THE COURT:  Can you read, write and understand the

25   English language?

1              THE DEFENDANT: Yes, sir.

2              THE COURT:  Can you understand as it is being spoken

3    this afternoon?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you understand that you are admitting

6    two violations of supervised release? What is the -- what is

7    the -- what grade is the -- the shall not commit any federal,

8    state or local crime?

9              MR. CARDIN:  Your Honor, violation is Grade A.

10             THE COURT:  Okay, thanks. Anyway, Mr. Marcantoni,

11   you understand that you are admitting a Grade A violation of

12   supervised release.  This violation would expose you to a

13   guidelines range of imprisonment of 12 to 18 months.  You don't

14   have to admit the violation. You can require the Government to

15   prove the violation at a hearing where they would through

16   witnesses and documents, attempt to prove by preponderance of

17   the evidence that you did in fact violate these conditions of

18   supervised release.

19             At that hearing, you will also have a right to be

20   represented by counsel. You will have the right to put on your

21   own evidence, call your own witnesses as well as of course,

22   cross examine the Government's witnesses and object to the

23   evidence.

24             And of course, if you needed additional time to

25   prepare for that hearing, I would give you a reasonable

1    postponement for that.  Do you understand the rights that you

2    are giving up, sir?

3              THE DEFENDANT: Yes, I do, Your Honor.

4              THE COURT:  And are you willing to proceed with --

5    by waiving those rights?

6              THE DEFENDANT: Yes, Your Honor.

7              THE COURT:  Thank you. Please have a seat.

8    Government's evidence?  Proffer?

9              MS. JOHNSON:  Yes, Your Honor.  If that -- we would

10   present to the Court a copy of his signed guilty plea that was

11   entered in the Court in case number 10-000777-RWT, it was

12   signed and executed by him on September 11, 2012.  In

13   particular, in the statement of facts, the defendant admitted

14   that between 2008 and at least at or about January 2011, he

15   knowingly conspired to distribute and possess with intent to

16   distribute 100 kilograms or more of marijuana.  And he

17   acknowledged who his co-conspirators were.

18              He acknowledged in the signed statement of facts

19   that he served as a dealer and a distributor in the marijuana

20   conspiracy and that he received shipments that ranged from 50

21   to 250 pounds and those shipments occurred sometimes as often

22   as twice per month.

23              That he -- that the co-conspirators collected money

24   from him on more than 10 occasions, collecting more than

25   $100,000 from him on multiple different occasions.  And I would

1   submit this as Government's Exhibit 1 for the record.

2              THE COURT:  Government 1 is admitted.

3                                  (The document referred to was

4                                  marked for identification as

5                                  Government's Exhibit 1 and was

6                                  received in evidence.)

7              THE COURT:  May I see it please?  Thank you.

8              MR. CARDIN:  May I make one comment, Your Honor?

9              THE COURT:  Yes, sir?

10             MR. CARDIN:  Thank you.  We did proceed rather

11  rapidly and perhaps the allegations in count 1 and 2 should

12  have reflected 100 kilograms rather than 1,000 kilograms.

13  Because I think the numbers were changed when we did execute

14  the plea agreement.

15             MS. JOHNSON:  Your Honor, I don't think that -- I

16  don't know that that affects the -- his admission but he is

17  admitting that he violated any federal, state or local law.  As

18  part of plea negotiations in this case, we allowed Mr.

19  Marcantoni to -- we negotiated a plea and allowed him to plead

20  to the 100 kilograms or more with a mandatory 10 years instead

21  of a mandatory 20 years that came with the 1,000 kilograms or

22  more.

23             THE COURT:  Well, the finding of the JNC of course

24  would be just the violation of the statutory condition, did not

25  or shall not commit any federal, state or local crime, do not

1   illegally possess a controlled substance so there will not be a

2   quantity in the finding or the judgement of commitment order.

3                MR. CARDIN: Right.  Thank you.

4                THE COURT:  Any other --- anything further?  Any

5   deletions, additions or corrections?

6                MR. CARDIN:  No, Your Honor.

7                THE COURT:  Mr. Marcantoni, did you hear what Ms.

8   Johnston told me?

9                THE DEFENDANT:  Yes, I did.

10               THE COURT:  Did she tell me the truth?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Are you admitting the violation of your

13  own free will?

14               THE DEFENDANT: Yes, I am, Your Honor.

15               THE COURT:  Are you admitting the violation because

16  you did in fact commit it?

17               THE DEFENDANT:  Yes, I did, Your Honor.

18               THE COURT:  Good.  Then I find that the Government

19  has proffered facts sufficient to prove by a preponderance of

20  the evidence that you violated statutory condition thall shall

21  not commit any federal, state or local crime and the statutory

22  condition that you should illegally possess a controlled

23  substance.  What is the Government's position on disposition?

24               MS. JOHNSON:  Your Honor, the Government in this

25  case is asking the Court to impose a term of imprisonment.

1   Consecutive to the sentence that he is now serving.  I think it

2   is important in this case, I know that Your Honor was not the

3   Judge who sat over the original case nor was I the prosecutor

4   involved in that original case that he is on supervised release

5   for.

6           But back in 2003, he plead guilty I think on the eve

7   of trial or on the morning of trial in that case as well, plead

8   guilty to the distribution of 100 kilograms or more of

9   marijuana.  And that instances guideline range was I believe 70

10  months, was the bottom of that guideline range.  And the Court

11  at that time imposed a sentence below the guideline range, a

12  sentence of 60 months.

13          The guideline range was actually 78 to 97 months.

14  Judge Davis gave him the benefit of believing that, I guess a

15  term of 60 months would be adequate to assure that the purposes

16  of sentencing were met and he was placed on that 60 month

17  sentence.

18          He was placed on supervised release on that sentence

19  on March 18, 2008.  As is set forth in our statement of facts

20  to the plea agreement which Mr. Marcantoni has --- as truthful,

21  in 2008, he was back involved in marijuana, he was back selling

22  marijuana.  Counsel submitted to the Court a sentencing memo

23  telling the Court what a great man he is and what wonderful

24  contributions he is making to the community.  Well, he was

25  making his living selling marijuana.

1          He agreed in this statement of facts to that fact,

2   to the fact that he was receiving loads of marijuana ranging

3   from 50 to 250 pounds at a time.  That he was paying for those.

4   Co-conspirators were collecting money from him.  Sometimes as

5   much as $100,000 at a time and one co-conspirator collected

6   money from him on at least 10 different occasions.

7          He has consented to a $500,000 forfeiture being

8   entered against him in this case representing some of the

9   proceeds he received as well as a Rolex watch.  He was part of

10  a business here, Your Honor.  He and in fact, some of the

11  leaders of this conspiracy are still fugitives but he received

12  a Rolex watch as a reward for being such a good salesman for

13  them here in Baltimore -- in Baltimore County, Maryland.

14         And he has agreed now to forfeit that watch as well

15  as the $500,000.  But what it is particularly alarming to the

16  Government is that this individual was put on probation in 2008

17  with Mr. Albert and shortly thereafter, was right back in this

18  business, right back into selling drugs.  In spite of the

19  sentence he received and in spite of the 60 month sentence he

20  served.

21         And with that, he is contacted by Mr. Albert because

22  he has violated some -- not filing his reports as he should.

23  They tried some intermediate actions with him and all of the

24  while he is dealing with Mr. Albert, he is selling his

25  marijuana.  He is back there doing the same business.  Mr.

1   Albert is trying to tell him that he is on the radar screen.

2   You are not filing your reports, you are doing some other

3   things.  And he put in some temporary steps hoping to get

4   Mr. Marcantoni on the right track.

5         But Mr. Marcantoni is out there selling marijuana,

6   on a day in and day out basis making hundreds of thousands of

7   dollars, if not millions of dollars selling marijuana here in

8   Baltimore County, Baltimore Maryland.  So in this instance,

9   counsel asks the Court to just impose a concurrent sentence.  A

10  guideline state in Section 7(B)(1.3) that a term of

11  imprisonment should be imposed that is consecutive to the

12  sentence  imposed even if that sentence is for the conviction

13  as to the basis of the underlying violation.

14        A message has to be sent to Mr. Marcantoni but not

15  only to Mr. Marcantoni but other people out in the community

16  that if you violate supervised release, it doesn't just get

17  washed into what you -- the basis for your violation.  To give

18  Mr. Marcantoni what he is asking for here which is the same 120

19  months sentence or a sentence concurrent with 120 month

20  sentence that Judge Titus imposed.  --- is to say that it

21  doesn't matter that you violated supervised release, that it

22  makes no difference because you are not getting any more of the

23  sentence than Judge Titus imposed.

24        Judge Titus had to give him 120 months. So he gave

25  him the low end of the guidelines which was 121 months.

1   Mr. Marcantoni didn't take supervised release serious.  Mr.

2   Albert was in contact with him throughout the time when he was

3   on supervised release, throughout the time that he has admitted

4   that he continued to sell marijuana.  We are not talking about

5   somebody who is selling a $20 bag of marijuana here.  Or a half

6   a pound there.

7          We are talking about somebody who was getting 50

8   pounds, 100 pounds, 250 pounds in one shipment and then

9   dispensing that and taking that money and living off of it and

10  living off of it very well here in this community.  So we are

11  asking the Court to impose a sentence in this case consecutive

12  to what Judge Titus has imposed.

13         And quite frankly it is the Government's position

14  that given the scope of his violation, as I said, it is not

15  somebody who was on probation for selling crack, who then goes

16  out on the street corner and sells a couple of $20 rocks of

17  crack.  This is someone who made the deliberate intention to I

18  am back on supervised release, I am back in the business of

19  selling marijuana.

20         And that is what he did.  And he didn't care that he

21  had to report to Mr. Albert.  He didn't care that he was on

22  supervised release.  He felt comfortable that he could get away

23  with it.  And for that reason, we are asking the Court to

24  impose the maximum that the Court can impose in this case.  We

25  think it is justified to go above the sentencing guidelines,

1   given the pervasive day in, day out violation, the scope of his

2   criminal conduct while on supervised release and also note that

3   under the guidelines as well, Section 71.4, provides for the

4   Court to go over that guideline range where a defendant

5   received a break on his initial sentence.

6           And then this initial sentence in this case, he in

7   essence got a break from Judge Davis when Judge Davis didn't

8   sentence him within the guideline range of 78 to 98 months,

9   rather Judge David imposed the mandatory minimum sentence of 60

10  months.  Which is what counsel is asking the Court to do in

11  this case, don't give him any more time, just let him serve

12  that 121 months because that is what he got from Judge Titus.

13          Given the fact that he had a benefit there and he

14  didn't take advantage of it, he was put on notice with

15  probation, he knew he was on supervised release and he went

16  back into this business.  And made hundreds of thousands of

17  dollars, as I said if not millions.  So we are asking the Court

18  to impose a consecutive sentence of 36 months.

19          So at least now when maybe Mr. Marcantoni gets out,

20  and has his 8 year supervised release in Judge Titus' case,

21  perhaps now he will take supervised release seriously.  I have

22  to tell you, Your Honor, at the time he plead guilty, one of

23  the things the questioned Judge Titus about is why did he have

24  to have 8 years of supervised release after he served his 10

25  years sentence.

 1         And I have the transcript if the Court wants to see

 2    that.  So he was concerned that he should have to be put on

 3    supervised release after that.  So we are asking the Court so

 4    that he will take his supervised release seriously the  next

 5    time that the Court imposed the  mandatory -- the maximum

 6    sentence consecutive to what he served.

 7         THE COURT:  Thank you. Defense?

 8         MR. CARDIN:  Thank you, Your Honor.  Your Honor, we

 9    would ask that both Mr. Levine and I have the opportunity to

10    address the Court.  On different  matters, we will not repeat

11    what we are saying.  I have listened as I always would to what

12    counsel has to say and one of the first things I noted was that

13    Ms. Johnson indicated that she is not in the prosecutor who was

14    at the original trial before Judge Davis.

15         Mr.  Hamlin and most of my communications went back

16    and forth with him because I had anticipated that he would be

17    here.  So, the fact that he is not, I suggested to this Court,

18    leaves us in a position where there are a number of questions

19    that might otherwise be answered which can't be because he is

20    not here, although certainly available.

21         Let me say this, I was there.  And contrary to what

22    the Government represented, it was not on the eve of trial that

23    Mr. Marcantoni plead guilty but in fact, it was probably about

24    three weeks into trial, we were only sitting two days a week

25    because Judge Davis had commitments, I think down at the Fourth

 1  Circuit, but wherever it was, it was out of state.  And the

 2  guilty plea was prompted by a comment by Judge Davis and then

 3  many meetings in the Court's chambers, when Judge Davis on the

 4  record said why are we in trial here?

 5        And indicated that this case should be resolved and

 6  indicated at that time and there was also discussion on the

 7  record as to whether or not mandatory sentencing was

 8  appropriate in this case.  So I don't want this Court to think

 9  that Judge Davis gave him a break because Judge Davis thought

10  that the guidelines did not apply.

11        Judge Davis did not believe that the guidelines were

12  appropriate in this case in the very beginning and he announced

13  that in open court.  Now, having said that, Mr. Marcantoni did

14  enter a plea of guilty before Judge Davis.  And we went through

15  any number of things before the Judge in conversation because

16  there were things that the Court wanted to know and the Court

17  received the sentence.

18        Indeed, Mr. Marcantoni was placed on supervised

19  release.  That is obvious and required.  Counsel remarks that

20  Mr. Marcantoni questioned this supervised release.  What

21  Mr. Marcantoni questioned was the Government filing its 851

22  motion at the last minute, which had the effect of increasing

23  the supervised release from four years to eight years.

24        And that was all part of the presentation that I

25  made and I am about to make to this Court.  That I believe and

1   I submit on behalf of Mr. Marcantoni that he has not been

2   treated fairly since being released on supervised release.  Or

3   at least from the time that he began under the supervision of

4   Mr. Albert.  So let me explain.

5          Mr. Marcantoni has always been fair and honest with

6   this Court.  Whether it be before Your Honor, whether it be

7   before Judge Davis, or before Judge Titus.  And I will tell the

8   Court that the issues that were raised and were litigated

9   before Judge Titus, day after day in many respects, were issues

10  that I still believe should have been exercised and should have

11  been resolved by appellate courts I think.

12         There are many, many issues which we and I use we

13  because we are the --- waived the in the plea agreement before

14  Judge Titus.  Actually an agreement was negotiated, you want to

15  talk on the eve of trial, we didn't finish before Judge Titus

16  on that Monday if I remember it being a Monday, probably about

17  3:00 or 3:30 in the afternoon.

18         And so it was not until the next day when we were

19  able to even provide that plea agreement to Mr. Marcantoni

20  because he had been taken from the courthouse by the marshals

21  back to his house unit if you will.  But he did -- he did enter

22  into the plea.  And there are factors there that we believe had

23  we had the time to negotiate, would have been more favorable to

24  him.

25         But that is not for today.  Because that agreement

1   was executed and is before the Court and we stand by it.  But I

2   can tell the Court this, Mr. Marcantoni was released.  He went

3   on to supervised release and from the minute he went on, there

4   was a problem. There was a personality conflict between him and

5   Mr. Albert.

6           Now when the Government stands before you and I know

7   Your Honor was a prosecutor, you have to rely upon the persons

8   who provided you with the information.  Whether it be agents,

9   whether it be probation officers and I suggest that much of the

10  presentation before the Court, be it this Court, Judge Titus',

11  have been influenced by the conduct of Mr. Albert.

12          And I will stand before this Court and say that

13  Mr. Albert has been dishonest in the Court, he has been

14  dishonest to counsel and dishonest to Mr. Marcantoni.  Now

15  Mr. Marcantoni was indicted in Baltimore County.  And indeed he

16  surrendered in Baltimore County, he was released.  And he was

17  advised by Mr. Albert that there would be a violation filed.

18  Of course there would be.

19          At that time, Mr. Marcantoni had secured the

20  services of Andrew White, an attorney, in this city and I know

21  the Court is familiar with him.  And Mr. White and Mr. --- came

22  into court to testify to this, Mr. White spoke to Mr. Albert

23  and Mr. Albert agreed that Mr. Marcantoni would not be

24  arrested, he could come into court ---.

25          However, in spite of that representation, Mr.

1   Marcantoni is arrested, he is brought into court and because of

2   that, obviously the detention hearing has a different vein.

3   And from that day on, everything went down.  And I will tell

4   this Court, we went through hearing after hearing dealing with

5   allegations that Mr. Marcantoni was violating electronic

6   surveillance.  Electronic monitoring.  That became required

7   because he had been indicted in Baltimore County and Mr. Albert

8   was asking for that.

9          And we went on and on, violation after violation

10  being noted.  That he was away from his residence and he swore

11  he wasn't.  And we had witnesses that showed that he wasn't.

12  It came time when the Court ordered that Mr. Stokes, Todd

13  Stokes go out and check.  And indeed Mr. Stokes found that the

14  apparatus was indeed faulty.  Was giving false reports.

15         But you see Mr. Albert wouldn't accept that.  Now,

16  Mr. Albert is not on trial, Mr. Marcantoni is. But the

17  Government is standing before this Court and asking for

18  consecutive time and I am saying to this Court that there is

19  absolutely no reason why there should be any such action.

20  Mr. Marcantoni received the top of the guidelines and those

21  guidelines were calculated including an enhancement for being

22  on supervised release.

23         So he has been punished.  It has been calculated, it

24  has been included.  I am not going to stand before this Court

25  and say that Mr. Marcantoni did not commit an offense.  He did.

1  And he has been punished for it.  He has received a sentence.

2  And as the Court will hear in a moment from Mr. Levine, indeed

3  he has been punished more severely than anybody else in this

4  conspiracy.

5            But I know this, Mr. Marcantoni is a good man.  And

6  for the Government to stand here and say that he made millions,

7  there is no such thing.  For the Government to say that he

8  didn't honor his commitments when required to report to submit

9  income tax returns, he did everything.

10           This Court is stepping into the shoes of Judge

11  Davis.  Nobody knows what Judge Davis ---.  But I know that

12  when the Court looks at Anthony Marcantoni and looks at him

13  personally, looks at his accomplishments as we tried to point

14  out and realize that it was a stage he was placed on where one

15  is not seeing the true picture but is being shown a picture,

16  colored if you will, by bias then I suggest that this Court

17  will look and see this man's received 121 months incarceration.

18  And indeed for this type of offense, has indicated a purveyor

19  if you will of marijuana, that certainly is ---.

20           And that is why I stand before this Court and ask

21  this Court in imposing any sentence, that it be concurrent with

22  that of Judge Titus.  And if I may,  Your Honor, I would like

23  to ask I --- by Mr. Levine.

24           MR. LEVINE:  Thank you, Your Honor, good afternoon.

25           THE COURT:  Good afternoon.

 1              MR. LEVINE:  Your Honor, at some point when it comes

 2    to the length of a prison sentence, we have to ask when is

 3    enough enough? And I know Your Honor has asked that question,

 4    the Government raised the fact that the guidelines indicate

 5    that it should -- a violation should run consecutive to a term

 6    of confinement for the actual offense.

 7              I know Your Honor has disagreed in the past.  In

 8    doing some research, I did come across the case of United

 9    States versus Randall Paul Schreve, Your Honor handled the

10    sentencing of that case for the substantive offense last year

11    and then followed that with a violation hearing.

12              Your Honor gave Mr. Schreve the top of the

13    guidelines for that.  And immediately thereafter, there was a

14    violation hearing and Your Honor sentenced Mr. Schreve to 24

15    months to run concurrent.  So Your Honor recognized at that

16    point in that case, that Mr. Schreve had gotten significant

17    sentence, it was sufficient to send a message.

18              Like Mr. Schreve, Mr.  Marcantoni received the top

19    of the guidelines.  That sentence of 121 months in a non-

20    violent case, was far more than any one else who has thus far

21    been sentenced who plead guilty in that conspiracy.  I know

22    Your Honor has read the papers and I won't go over each

23    sentence that each co-defendant has received.

24              But Mr. Marcantoni faced a mandatory minimum

25    sentence of 10 years because of the 851 enhancement.  Because

1    of his prior conviction.  But for that enhancement, he would

2    have been looking at 97 months to 121 months.  But for the

3    violation, which has already been taken into account, he would

4    have been looking at a criminal history category less than he

5    was looking at because that was factored into the guidelines

6    calculation.

7              So in effect, Mr. Marcantoni was facing and received

8    a higher sentence because these factors were taken into

9    account.  As the Court knows from the submission, there is a

10   lot of good in Mr. Marcantoni, in fact, we heard the same

11   arguments today from the Government that Judge Titus heard at

12   Mr. Marcantoni's sentencing.  And although there was a little

13   bit more at the sentencing, the Government criticized

14   Mr. Marcantoni's efforts to start a martial arts studio.

15             They suggested that the people he was keeping

16   company with were not the type of people one should associate

17   with.  In fact, Mr. Cardin retrieved a poster yesterday which

18   he saw on display in Baltimore City and it shows Mr.

19   Marcantoni's business partner at --- which is a juhitsu Martial

20   Arts studio and if I can just --

21             (Pause.)

22             MR. LEVINE: Your Honor, if I may approach?

23             THE COURT:  Yes.

24             MR. LEVINE:  That is a poster of Mr. John

25   Ryland(sic) who helped run Ground Control and here is a news

1   release about this campaign, --- mayors, that is Baltimore City

2   Mayor's anti-animal abuse advisory commission.  "Show your soft

3   side campaign aimed at changing the mind set of troubled teens

4   who abuse animals in an attempt to appear, 'men'."  So this is

5   one of the people that Mr. Marcantoni associated himself with.

6           I would say that Mr. Marcantoni is a lot more than

7   the marijuana conviction would suggest. He raised money for a

8   widow and her young child.  He started a business, a legitimate

9   business which helped members of the community as reflected in

10  the various letters.

11          Your Honor, the bottom line is that Mr. Marcantoni

12  still has a great deal that he can contribute to society and

13  unfortunately those contributions have been on hold.  They have

14  been on hold for a very long time.  121 months.  We are simply

15  the Court to recognize as this Court has recognized in other

16  cases, that he has -- he is not getting away with anything.

17          His violation has been considered in the guideline

18  range calculation.  It was considered in the plea negotiation

19  when counsel tried to get under the 121 months.  But the fact

20  that Mr. Marcantoni had done this before and was on supervised

21  release, played a part in obtaining the plea that we received.

22  The one that demanded mandatory minimum of 10 years and 8 years

23  of supervised release.

24          Mr. Marcantoni is older now.  He has been confined

25  since he was arrested on this offense.  He -- I don't hesitate

1  to say that I know Mr. Marcantoni has learned a lesson here.  I

2  can't imagine he will ever find himself in a courtroom again.

3  And we just have to say enough is enough when it comes to a

4  lengthy prison sentence, Your Honor, there is no reason that

5  a -- there is nothing that a consecutive sentence will do.

6          It will not suggest to the community that -- a

7  concurrent sentence would not suggest to the community that Mr.

8  Marcantoni has gotten away with something.  The community has

9  seen that he has been punished significantly for what he did,

10  and for what he plead guilty for.  Thank you.

11          THE COURT:  Thank you.  Mr. Marcantoni, please

12  stand.  In this case I find that revocation is appropriate and

13  supervised release is revoked. This is perhaps my most hotly

14  contested violation is supervised release.  The violations

15  alleged are serious and I have heard a good bit of discussion

16  about the personality conflict between the probation agent and

17  Mr. Marcantoni.

18          Of course the personality conflict does not excuse

19  the subsequent criminal conduct which is where the additional

20  punishment for the violation itself.  Accordingly I find that a

21  variance from the guidelines would be sufficient to reflect the

22  seriousness of the offense and to deter comparable conduct,

23  very limited aims (sic) of the sentence and that variance would

24  be sufficient and not greater than necessary to again reflect

25  seriousness of the violation and to deter comparable conduct.

1                  Accordingly, Mr. Marcantoni, I commit you to the

2      custody of the Attorney General as authorized designee of the

3      Bureau of Prisons, serve a term of imprisonment of six months.

4      That will be six months consecutive to the time that you were

5      serving on Judge Titus' conviction.  Do you understand the

6      sentence?

7                  THE DEFENDANT:   I do, Your Honor.

8                  THE COURT:  You have 14 days from today's date to

9      file an appeal.  If you cannot afford to pay a filing fee, you

10     can appeal without a fee, do you understand?

11                 THE DEFENDANT:  I do.

12                 THE COURT:  Thank you.  Good day.

13                 MR. CARDIN:  Thank you, Your Honor.

14                 (Whereupon, the hearing concluded.)

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct

transcript from electronic sound recording of the proceedings

in the above-entitled matter.


<u>/s/</u> <u>Lisa</u> <u>Contreras</u>                        <u>September</u> <u>25,</u> <u>2013</u>
Lisa Contreras                                                Date
Certified Transcriber
Certificate No. CET**D-474